UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CARLOS AUGUSTO CHANG BARRIOS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:25-cv-00406-JAW |
| | ) | |
| CRAIG SHEPLEY, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Finding the government's detention of a noncitizen violates due process, the court grants the noncitizen's petition for writ of habeas corpus and orders government officials provide the noncitizen a bond hearing and release him pending the bond hearing subject to release conditions.

**I.    PROCEDURAL HISTORY**

Petitioner Carlos Augusto Chang Barrios brings an amended verified petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging that his immigration detention violates the Immigration and Nationality Act (INA) and his Fifth Amendment due process rights.

On August 6, 2025, Mr. Chang Barrios filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241 and further sought, inter alia, a temporary restraining order (TRO) preventing his transfer outside the District of Maine as well as access to counsel. *Emergency Verified Pet. for Writ of Habeas Corpus and Req. for Emergency Injunctive Relief* (ECF No. 1) (*Pet.*). Though Mr. Chang Barrios has filed an amended verified petition for writ of habeas corpus dropping the access to counsel

claim, he maintains his detention is unlawful and seeks a writ ordering Joseph D. McDonald Jr., in his official capacity as Sheriff of Plymouth County of Massachusetts and warden of Plymouth County Correctional Facility (PCCF), Patricia H. Hyde in her official capacity has New England Field Office Director for U.S. Immigration and Customs, Madison Sheahan in her official capacity as Deputy Director of U.S. Immigration and Customs Enforcement (ICE), Todd Lyons, in his official capacity as Acting Director of ICE, and Kristi Noem, in her official capacity as U.S. Secretary of Homeland Security (jointly, Federal Respondents) to release him immediately. *First Am. Habeas Pet. and Compl. for declaratory and Injunctive Relief* (ECF No. 25) (*First Am. Pet.*).[1]

Pursuant to 28 U.S.C. § 2243, on August 7, 2025, the Court ordered Federal Respondents to show cause within three days why Mr. Chang Barrios's petition for a writ of habeas corpus should not be granted. *O.S.C.* (ECF No. 3). The Court's order instructed the parties it would schedule a hearing on the matter upon receiving Federal Respondents' response, due by August 12, 2025. *Id.* at 2.

The next day, August 8, 2025, the Court held a telephone conference of counsel to discuss Mr. Chang Barrios's request for TRO preventing transfer from Maine and ensuring access to his attorneys. *Min. Entry* (ECF No. 8). Following the telephone

---

[1]    Mr. Chang Barrios's initial petition for writ of habeas corpus additionally named Craig Shepley, in his official capacity as Deputy Chief Patrol Agent (DCPA) of the Houlton Sector, U.S. Customs and Border Protection (CBP), in the state of Maine, Peter R. Flores, in his official capacity as Acting Commissioner of CBP, Diane J. Sabatino, in her official capacity as Acting Executive Assistant Commissioner, Office of Field Operations, for CBP as defendants. *Pet.* at 3-4. Although Sheriff McDonald is a state official, the Court refers to "Federal Respondents" collectively to remain consistent with all other orders in this matter.

conference, the Court issued an order granting Mr. Chang Barrios's request for a TRO and temporarily enjoining Federal Respondents from removing Mr. Chang Barrios from the District of Maine pending further order of this Court.[2]  *Order on Mot. for TRO* at 1-10 (ECF No. 10).

At the August 8, 2025 conference, the Court additionally granted Federal Respondents' oral motion for extension of time to respond to the Court's August 7, 2025 order to show cause, instructing Federal Respondents to file their response by August 26, 2025, and instructing the Clerk of Court to schedule a status conference with the parties at a time mutually convenient on August 29, 2025.  *Notice of Hr'g* (ECF No. 9).

On August 25, 2025, on motion of Federal Respondents and consented to by Mr. Chang Barrios, the Court amended its August 8, 2025 TRO effective August 19, 2025 to allow Federal Respondents to transfer Mr. Chang Barrios to PCCF in Massachusetts.  *Order on Mot. to Amend TRO* (ECF No. 17).  Federal Respondents responded to the Order to Show Cause on August 27, 2025.[3]  *Return and Response to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 20) (*Opp'n*).  On August

---

[2]    The Court also ordered the Federal Respondents to give him access to counsel.  *Order on Mot. for TRO* at 8.  But Mr. Chang Barrios has since dropped the access to counsel issue.  *Compare Emer. Verified Pet. for Writ of Habeas Corpus and Req. for Emer. Injunctive Relief* (ECF No. 1) *with First Am. Compl.*

[3]    At the August 8, 2025 conference, the Court additionally granted Federal Respondents' oral motion for extension of time to respond to the Court's August 7, 2025 order to show cause, instructing Federal Respondents to file their response by August 26, 2025, and instructing the Clerk of Court to schedule a status conference with the parties at a time mutually convenient on August 29, 2025.  *Notice of Hr'g* (ECF No. 9).  Next, on August 26, 2025, the Court granted Federal Respondents further extension of time to respond.  *Order on Mot. to Extend Time to File Return/Resp.* (ECF No. 19).

28, 2025, Mr. Chang Barrios filed a motion to extend and amend the TRO, *Pet'r's Mot. to Extend and Amend TRO* (ECF No. 21), which Federal Respondents did not oppose, and the Court granted on August 29, 2025 following the status conference. *Order on Mot. to Extend and Amend TRO* (ECF No. 23) (*TRO Am. Order*).

On September 5, 2025, Mr. Chang Barrios filed both an amended habeas petition, *First Am. Pet.*, and a response to Federal Respondents' opposition. *Pet'r's Reply to Gov't's Resp. to O.S.C.* (ECF No. 26) (*Pet'r's Reply to Opp'n*). On September 16, 2025, Mr. Chang Barrios filed a notice of additional relevant authority drawing the Court's attention to a precedential decision from the Board of Immigration Appeals (BIA) and a relevant order from a sister district in the First Circuit. *Pet'r's Notice of Additional Relevant Authority* (ECF No. 27). The Court, in accordance with 28 U.S.C. § 2243, held a hearing on September 18, 2025. *Min. Entry* (ECF No. 28) (*Hr'g Min. Entry*). Because both parties agreed that the proceeding presented only issues of law, Mr. Chang Barrios was not present.[4] *Id.*

## II.    THE FACTUAL RECORD[5]

Carlos Augusto Chang Barrios is a 35-year-old indigenous Guatemalan citizen who, after surviving the Guatemalan genocide, fled Guatemala approximately 17 years ago. *First Am. Pet.* ¶ 1; *Pet'r's Reply to Opp'n.* at 1-2. He entered the United

---

[4]    28 U.S.C. § 2243 provides that "[u]nless the application for the writ and return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained."

[5]    For the purposes of Mr. Chang Barros' petition for writ of habeas corpus, the Court reviews the relevant facts as pleaded in his first amended verified petition, *First Am. Pet.*, Federal Respondents' response to the August 7, 2025 order to show cause, *Opp'n*, and Mr. Chang Barrios's response to Federal Respondents' opposition. *Pet'r's Reply to Opp'n.*

States "without inspection or contact with immigration official" at the age of 17. *First Am. Pet.* ¶ 1. Prior to his detention, he resided in Lawrence, Massachusetts where he worked as a carpenter and regional leader of a national immigrant rights work organization. *Id.* ¶ 19. Mr. Chang Barrios "has no criminal record and has never been arrested anywhere in the world." *Id.* ¶ 1.

On July 29, 2025, CBP agents encountered Mr. Chang Barrios following a traffic stop in Maine, took him into custody, and brought him to a CBP facility in Rangeley, Maine. *First Am. Pet.* ¶ 2. There, pursuant to §287 of the INA, codified at 8 U.S.C. § 1357(a), CPB served Mr. Chang Barrios with a Form I-200 Warrant for Arrest of Alien, an administrative warrant, "alleging he was taken into custody pursuant to 8 U.S.C. § 1226(a), section 236" of the INA. *Id.*; *Opp'n* at 3; *Pet'r's Reply to Opp'n*, Attach. 5 *Warrant for Arrest of Alien.*[6] CBP then served Mr. Chang Barrios with a Notice to Appear (NTA), charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen "present in the United States who has not been admitted or paroled" and ordering him to appear in Chelmsford, Massachusetts before an immigration judge on August 28, 2025. *Opp'n* at 3; *Pet'r's Reply to Opp'n*, Attach. 4 *Notice to Appear.* The NTA form gives CBP officers the option to designate a noncitizen in removal proceedings as "arriving alien[,]" an "alien present in the United States who has not been admitted or paroled[,]" or "admitted to the United

---

[6]     Where immigration laws use the term "alien," this Court prefers the term "noncitizen," which in this context has a nearly identical meaning. *See, e.g., Xirum v. Bondi*, 141 F.4th 345, 351 (1st Cir. 2025) (using noncitizen and alien interchangeably). To minimize alterations, this Court keeps whichever term is used in the original statute or case but uses noncitizen to replace pronouns where appropriate.

States." *Notice to Appear.* CBP did not designate Mr. Chang Barrios as an "arriving alien." *Id.* Finally, a CBP agent issued a Notice of Custody Determination under 8 U.S.C. § 1226(a), INA §236(a), in which the officer elected to detain Mr. Chang Barrios pending final administrative determination in his case and, in acknowledging receipt of his custody determination, Mr. Chang Barrios requested review by an immigration judge. *First Am. Pet.* ¶ 2; *Opp'n* at 3; *Pet'r's Reply to Opp'n* at 3; *id.* Attach. 1 *Notice of Custody Determination.*

On August 8, 2025 this Court issued an order granting Mr. Chang Barrios's request for a TRO and temporarily enjoining Federal Respondents from removing Mr. Chang Barrios from the District of Maine. *Order on Mot. for TRO* at 1-10. On August 19, 2025, with Mr. Chang Barrios's consent, he was moved to PCCF in Massachusetts and transferred to ICE custody. *Opp'n* at 4. On August 25, 2025, this Court amended the TRO effective August 19, 2025 to account for Federal Respondents transfer of Mr. Chang Barrios to PCCF in Massachusetts. *First Am. Pet.* ¶ 2; *Opp'n* at 4.

Once ICE assumed custody of Mr. Chang Barrios, Federal Respondents changed the basis on which he was detained and stated: "ICE maintains mandatory detention authority to hold Mr. Chang Barrios without bond pursuant to 8 U.S.C. § 1225(b)(2)[,]" INA §235(b)(2). *Opp'n* at 2. Despite reclassifying Mr. Chang Barrios's detention, Federal Respondents filed his request for bond hearing—which he had requested on July 29, 2025 upon receipt of the Notice of Custody Determination—in the Chelmsford Immigration Court on August 22, 2025. *First Am. Pet.* ¶ 7. Later that day, the Chelmsford Immigration Court issued a hearing notice, setting Mr.

Chang Barrios's bond redetermination hearing[7] for August 28, 2025. *Id.* On August 27, 2025, Federal Respondents uploaded to the Chelmsford Immigration Court a marked-up version of the July 29, 2025 notice of custody determination with a line drawn across the page and the word "cancelled" written. *Pet'r's Reply to Opp'n* Attach. 8 *Altered Notice of Custody Determination.* Federal Respondents do not claim that any substitute or amended document was served on Mr. Chang Barrios stating the basis for his detention. The Immigration Judge subsequently announced she would reschedule the hearing, and, on September 5, 2025, the Immigration Judge set a rescheduled hearing for September 11, 2025. *First Am. Pet.* ¶ 8. However, before Mr. Chang Barrios's bond redetermination hearing took place, the BIA issued a precedential decision, discussed further below, that foreclosed the Immigration Judge's ability to hold a custody redetermination hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec 216 (B.I.A. 2025).

## III.    THE PARTIES' POSITIONS

### A.    Mr. Chang Barrios's Amended Motion for Writ of Habeas Corpus

Mr. Chang Barrios claims he is wrongly being held subject to mandatory detention under 8 U.S.C. § 1225(b)(2), § 235(b)(2) of the INA. *First Am. Pet.* ¶¶ 9-10. Mr. Chang Barrios alleges first that Federal Respondents' decision to keep him in custody without "an opportunity for timely custody redetermination or bond hearing . . . violates his right to due process[,]" *id.* ¶ 31, and second that Federal Respondents

---

[7]    This Order uses the terms "bond hearing" and "bond redetermination hearing" interchangeably to refer to any hearing in which the Immigration Judge considers any aspect of a noncitizen's detention or conditions of release pursuant to 8 U.S.C. § 1226.

application of 8 U.S.C. § 1225(b)(2) to him "violates the INA[,]" *id.* ¶ 37, "because he has entered the U.S. more than 17 years ago." *Id.* ¶ 36. In support of his due process claim, he asserts that he "has unquestionably strong ties and deep connections to the United States and is entitled to access to basic rights." *Id.* ¶ 27 Citing Supreme Court precedent in support of his due process claim, Mr. Chang Barrios asserts he "has unquestionably strong ties and deep connections to the United States and is entitled to access to basic rights". *Id.*

## B.    Federal Respondents' Response to the Order to Show Cause

Federal Respondents counter that ICE maintains mandatory detention authority to hold Mr. Chang Barrios without bond pursuant to 8 U.S.C. § 1225(b)(2), § 235(b)(2) of the INA, and even if the Court alternatively concluded that Mr. Chang Barrios is detained under 8 U.S.C. § 1226(a), § 236(a) of the INA, Mr. Chang Barrios could avail himself of the due process protections under that provision. *Opp'n at 2.* Therefore, Federal Respondents argue, Mr. Chang Barrios's "detention does not violate the Due Process Clause of the Fifth Amendment." *Id.*

## IV.    DISCUSSION

### A.    Jurisdiction

Federal Courts have "an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate." *Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1258 (1st Cir. 1993). The INA "channels immigration claims through the administrative process and sharply limits judicial review while that process is ongoing." *Sicha v. Bernal*, No. 1:25-cv-00418, 2025 U.S.

Dist. LEXIS 169007, at *10 (D. Me. Aug. 29, 2025). The relevant statute is § 1252(b)(9), the claims-channeling provision, which provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision . . . to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). The First Circuit explained that § 1252(b)(9):

> aims to consolidate "all questions of law and fact" that "arise from" either an "action" or a "proceeding" in connection with the removal of an alien. Importantly, the statute channels federal court jurisdiction over "such questions of law and fact" to the courts of appeals and explicitly bars all other methods of judicial review, including habeas.

*Aguilar v. U.S. Immigration and Customs Enforcement*, 510 F.3d 1, 9 (1st Cir. 2007).[8]

As Judge Nancy Torresen recently noted, "the question of whether [Petitioner's] claims 'aris[e] from' removal proceedings . . . is less straightforward than the

---

[8]    In a recent opinion addressing a petition for a writ of habeas corpus, Chief Judge Lance E. Walker observed:

> I use *Aguilar* as the standard for my analysis even though, post-*Aguilar*, the Supreme Court interpreted section 1252(b)(9). See *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *Jennings* produced three separate interpretations of section 1252(b)(9). A plurality concluded that the legal questions associated with the assessment of a prolonged detention claim did not "arise from" removal proceedings. *Id.* at 840 (Alito, J.) (plurality opinion). A concurrence suggested section 1252(b)(9) strips jurisdiction over claims that arise from any "congressionally authorized portions of the deportation process that necessarily serve the purpose of . . . removal." *Id.* at 854 (Thomas, J., concurring in part). A dissent concluded jurisdiction is unaffected by section 1252(b)(9) where petitioners do not challenge an order of removal. *Id.* at 876 (Breyer, J., dissenting). None of these interpretations are binding, nor has the First Circuit had an opportunity to address them. As such, *Aguilar* is the controlling precedent.

*Rodrigues De Oliveira v. Joyce*, No. 2:25-cv-00291, 2025 U.S. Dist. LEXIS 125776, at *5 n.6 (D. Me. July 2, 2025). The Court agrees with Chief Judge Walker that *Aguilar* is the controlling precedent and adheres to this standard.

Government suggests." *Mboko v. Joyce*, No. 25-cv-00240, 2025 U.S. Dist. LEXIS 114925, at *6 n.6 (D. Me. June 17, 2025).  In *Aguilar*, the First Circuit observed that Congress's use of "arising from" in § 1252(b)(9) means the jurisdiction-stripping impact of the statute is not "limitless in its scope." *Aguilar*, 510 F.3d at 10 ("[T]hese words cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien").  The First Circuit therefore concluded that § 1252(b)(9) did not strip federal courts of jurisdiction over "claims that are independent of, or wholly collateral to, the removal process.  Among others, claims that cannot effectively be handled through the available administrative process fall within that purview." *Id.* at 11.

As Chief Judge Walker recently observed, "[a]lthough one would expect that a dispute over the propriety of detention pending removal proceedings would be something other than collateral to the removal process, that is not the way it turns out in practice." *De Oliveira*, 2025 U.S. Dist. LEXIS 125776, at *7 (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (hearing habeas claim because it challenged the "statutory framework that permits detention without bail" rather than an exercise of discretion by the Secretary)); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (same, "cabin[ing] the discretion granted [to the Attorney General] through the constitutional restraints applicable to all government action," while preserving the Attorney General's ability to exercise discretion "within those limits").  In that case, Chief Judge Walker concluded he had jurisdiction over a petitioner's habeas claim, explaining:

> I see this case as following the same jurisdictional line as *Kim* and *Hernandez-Lara*. The record before me simply fails to depict any reasoned exercise of discretion by the Attorney General or her designee other than the discretion exercised by the officers in relation to the decision to arrest the Petitioner. Furthermore, and in any event, Petitioner here challenges the legality of a regulation that has deprived her of a bond hearing before an immigration judge, such that her habeas challenge is focused on the "statutory framework" that subjects her to mandatory detention without the possibility of release on bond. *Kim*, 538 U.S. at 517.

*Id.* at *7-8. The Court reaches the same determination here, for similar reasons explained by Judge Walker. Here, Mr. Chang Barrios challenges Federal Respondents' decision to detain him under § 1225(b)(2) subject to mandatory detention without a bond hearing or the possibility of release on bond in violation of his Fifth Amendment right to due process. Thus, Mr. Chang Barrios's challenge is focused on the "statutory framework" pursuant to which he is currently detained. *See Kim*, 538 U.S. at 517; *accord De Oliveira*, 2025 U.S. Dist. LEXIS 125776, at *8.

Based on the foregoing, the Court concludes it has jurisdiction over Mr. Chang Barrios's petition for a writ of habeas corpus and turns to the merits of Mr. Chang Barrios's petition.

### B.    The Merits

The Court begins with background on the statutory scheme encompassing mandatory and discretionary detention under §§ 1225 and 1226, respectively. Next, the Court explains why the facts of Mr. Chang Barrios's case, plain text of the relevant statutes, the overall statutory scheme, and interpreting caselaw demonstrate that Mr. Chang Barrios, as a noncitizen present in the United States for seventeen years, is not "seeking admission" and thus cannot be detained subject to

mandatory detention under § 1225(b)(2)(A). Finally, this Court addresses why Due Process demands of the Fifth Amendment require Federal Respondents accord him the right to a bond hearing.

### 1. Statutory Framework

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality opinion). Relevant here is § 1225(b)(2).[9] Under § 1225(b)(2) "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Thus, § 1225(b)(2) creates a mandatory detention scheme. *See Jennings*, 583 U.S. at 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591

---

[9]    Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expedited removal proceedings. *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Noncitizens subject to expedited removal can avoid removal with successful asylum claims. However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

U.S. 103, 108 (2020). Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Section 1226(a) thus "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 Dist. LEXIS 128085, at *4-5 (D. Mass. July 7, 2025). However, § 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved in certain enumerated criminal activities. 8 U.S.C. § 1226(c)(1). None of those criminal activities is at issue here.

The Supreme Court has explained, albeit in a plurality decision, that "U.S. immigration law authorizes the Government to detain certain aliens <u>seeking admission</u> into the country under §§ 1225(b)(1) and (b)(2)," "[i]t also authorizes the Government to detain certain aliens <u>already in the country</u> pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis supplied); *see also id.* at 288 (explaining that, "once inside the United States" a noncitizen "<u>present in the country</u> may still be removed" under "Section 1226") (emphasis supplied)).

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8) (2025). If the

immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1) (2025). At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk". *Hernandez-Lara*, 10 F.4th at 41. An immigration judge's decision to continue detaining a noncitizen may be appealed to the BIA. 8 C.F.R. § 236.1(d)(3).

### 2.    Applicability of 8 U.S.C. § 1226(a)

Because § 1225(b)(2) requires mandatory detention and 8 U.S.C § 1226(a) entitles Mr. Chang Barrios to a bond hearing with possibility of release pending immigration proceeding, it is dispositive to Mr. Chang Barrios's habeas petition to determine which statute applies. The question is whether § 1225(b)'s provision for mandatory detention of noncitizens "seeking admission" applies to someone like Mr. Chang Barrios who has been residing in the United States for more than two years. 8 U.S.C. § 1225(b)(2)(A). The Court concludes that § 1225(b) is inapplicable to Mr. Chang Barrios based on the facts of his case, the plain text of the relevant statutes, the overall statutory scheme, and interpreting caselaw.

### a.    Facts of Mr. Chang Barrios's Arrest and Detention

Federal Respondents' own detention documentation—the arrest warrant, the NTA, and notice of custody determination—consistently classified Mr. Chang Barrios as subject to detention on a discretionary basis under § 1226(a), which undermines Federal Respondents' claim that Mr. Chang Barrios is subject to mandatory detention

14

under § 1225(b).  During the July 29, 2025 traffic stop, CBP served on Mr. Chang Barrios an administrative warrant, which declares "Carlos Augusto Chang Barrios . . . is within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act" which is codified as 8 U.S.C. § 1226(a).  *Warrant for Arrest of Alien*. CBP served Mr. Chang Barrios with a NTA, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen "present in the United States who has not been admitted or paroled."  *Notice to Appear*.  As mentioned above, the NTA form gives immigration authorities the option to designate a noncitizen in removal proceedings as "arriving alien[,]" an "alien present in the United States who has not been admitted or paroled[,]" or "admitted to the United States," and, significantly, CBP did not designate Mr. Chang Barrios as an "arriving alien."  *Id.*  Further, a CBP agent issued a Notice of Custody Determination under 8 U.S.C. 1226(a) in which the officer elected to detain Mr. Chang Barrios pending final administrative determination in his case.  *Notice of Custody Determination*.

This Court's first indication that Mr. Chang Barrios's detention classification had been changed came in Federal Respondents' Response to Order to Show Cause, which indicated that on or about August 19, 2025, when Mr. Chang Barrios went into ICE custody, Federal Respondents took the position that he was now being detained pursuant "mandatory detention authority to hold Petitioner without bond pursuant to 8 U.S.C. § 1225(b)(2)."  *Opp'n* at 2.  Despite reclassifying Mr. Chang Barrios's detention on or about August 19, 2025 when ICE took custody, Federal Respondents

filed his request for bond hearing on August 22, 2025 in the Chelmsford Immigration Court. *First Am. Pet.* ¶ 7. On August 27, 2025, Federal Respondents uploaded to the Chelmsford Immigration Court a marked-up version of the July 29, 2025 notice of custody determination with a line drawn across the page and the word "cancelled" written. *Altered Notice of Custody Determination*. The effect of the marked-up notice of custody determination is unclear, but the Court takes it as evidence of Federal Respondents' changed position. However, Federal Respondents do not claim that any substitute or amended document was served on Mr. Chang Barrios stating a new basis for his detention.

It remains unexplained what authority Federal Respondents rely on in changing the basis for Mr. Chang Barrios's detention. Even if the Federal Respondents proposed a justification, post hoc rationalizations are disfavored. *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24, (2020) (holding that, under arbitrary and capricious review in the administrative law context, "[t]he basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations"). The facts of Mr. Chang Barrios's detention support that he was not mandatorily detained as a noncitizen "seeking admission" § 1225(b), but rather as someone "already in the country," *Jennings*, 583 U.S. at 288-89, pursuant to Federal Respondents' discretionary authority under § 1226(a). *See Jimenez v. FCI Berlin*, No. 25-cv-00326, 2025 U.S. Dist. LEXIS 176165, at *13 (D.N.H. Sept. 8, 2025) (noting government's position that habeas corpus petitioner is detained under § 1226

16

"ignores the statutory authority that the government itself relied on for [petitioner's] initial release and his recent arrest"); *Romero v. Hyde*, No. CV 25-11631, 2025 U.S. Dist. LEXIS 160622, at *16 (D. Mass. Aug. 19, 2025) (same, noting "abstract statutory interpretation issues raised by this case must be considered against the backdrop of one uncontestable fact—Petitioner has always been treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225"); *Benitez v. Francis*, No. 25 CIV. 5937, 2025 U.S. Dist. LEXIS 153952 (S.D.N.Y. Aug. 13, 2025) (same, finding that § 1226(a) applies where government respondents consistently treated habeas corpus petitioner as already in the country and subject to § 1226(a) discretionary authority but changed basis for petitioner's detention as "seeking admission" pursuant to § 1225(b) during litigation).

### b.    Plain Text and statutory scheme

Independent of Federal Respondents' own detention documentation consistently classifying Mr. Chang Barrios as subject to discretionary detention under § 1226(a), the plain text and overall statutory scheme compel the same conclusion: Mr. Chang Barrios should be subject to discretionary detention under 8 U.S.C. § 1226(a) and therefore entitled to a bond hearing to challenge his custody determination pending immigration proceedings.

The language of §§ 1225 and 1226 compels this result. "We begin, as always, with the text of the statute" interpreted "according to its 'plain meaning at the time of enactment.'" *United States v. Winczuk*, 67 F.4th 11, 16 (1st Cir. 2023) (quoting *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020)). A "Court must read the

words Congress enacted 'in their context and with a view to their place in the overall statutory scheme.'" *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).   The mandatory detention provision reads:

> [i]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

"Seeking admission" is in the present tense.   While undefined in the statute, it "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, No. CV 25-11613, 2025 U.S. Dist. LEXIS 141724 (D. Mass. July 24, 2025).   It is a blackletter rule of statutory construction that "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992).   Further, reading together two of the statue's phrases—"an applicant for admission" who is "seeking admission"—gives the impression that "the noncitizen is actively engaged in the exercise of being admitted to the United States, rather than currently residing here and seeking to stay." *Chafla v. Scott*, No. 2:25-cv-00437, 2025 U.S. Dist. LEXIS 184909, at *17 (D. Me. Sept. 21, 2025).   Moreover, as mentioned above, this interpretation coheres with Federal Respondents' own detention documentation. *See Notice to Appear*.   NTA form gives immigration authorities the option to designate a noncitizen in removal proceedings as "arriving alien[,]" an "alien present in the United States who has not been admitted or paroled[,]" or "admitted to the United

States," and, significantly, CBP did not designate Mr. Chang Barrios as an "arriving alien." *Id.*

If § 1225(b)(2)(A) applied to each "applicant for admission," the phrase "seeking admission" would be surplusage. The canon against surplusage "urges courts to give each word meaning." *Ardente v. Standard Fire Ins. Co.*, 744 F.3d 815, 819 (1st Cir. 2014). Under the broad interpretation, all noncitizens within the United States— including those already present and having resided in the United States for several years—can be subject to mandatory detention. By that logic, § 1225(b)(2)(A) must be read with the terms "seeking admission" struck from the statute. *Id.* ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . .."); *see Benitez*, 2025 U.S. Dist. LEXIS 153952, at *18 (conducting a surplusage analysis of section 1225(b)(2)(A)). While Mr. Chang Barrios was never lawfully admitted to the United States, "it does not follow that he continues to be actively 'seeking' such lawful entry at this time" because he has, in fact, "already 'entered' the country (albeit unlawfully)." *Id.* at *19. Instead, "one would say that [he] had entered unlawfully but now seek[s] a lawful means of remaining there." *Id.* at *21.

Adopting the position that § 1225's provision for mandatory detention of noncitizens "seeking admission" applies those who are arrested on a warrant while residing in the United States would also render recent amendments to § 1226 superfluous. *See Gomes*, 2025 Dist. LEXIS 128085, at *19 (stating "[s]uch an

interpretation, which would largely nullify a statute Congress enacted . . ., must be rejected"). In January 2025, Congress passed an amendment, the Laken Riley Act, to § 1226(c), the sole exception to § 1226(a)'s discretionary detention framework. *Compare* 8 U.S.C. § 1226(a) ("Except as provided in subsection (c) . . . the Attorney General . . . may"), *with id.* § 1226(c)(1) ("The Attorney general shall take into custody any alien who . . ."). The Laken Riley Act, codified in 8 U.S.C. § 1226(c)(1)(E), mandates detention for a noncitizen who (i) is inadmissible because he is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), obtained documents or admission through misrepresentation or fraud, *id.* § 1182(a)(6)(C), or lacks valid documentation, *id.* § 1182(a)(7) (the "inadmissibility criterion"); "and" (ii) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," (the "criminal conduct criterion"). 8 U.S.C. § 1226(c)(1)(E)(i)-(ii). In other words, a noncitizen is subject to mandatory detention under § 1226(c)(1)(E) only where both the inadmissibility criterion and the criminal conduct criterion are satisfied.

Were inadmissible noncitizens already subject to mandatory detention under § 1225(b)(2), regardless of whether they have met the criminal conduct criterion, the Laken Riley Act would be redundant—imposing mandatory detention for noncitizens already subject to it. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397

20

(1995). To have a real and substantial effect, the Laken Riley Act must have created mandatory detention authority for noncitizens present in the United States charged with certain enumerated crimes because the other mandatory detention provisions of the INA did not apply to those noncitizens. *See Chafla*, 2025 U.S. Dist. LEXIS 184909, at *21 (finding "[i]t is therefore safe to presume that Congress's amendment to section 1226(c) . . . was necessary because the existing provisions of the INA did not subject those same noncitizens to mandatory detention"); *Francisco T. v. Bondi*, No. 25-CV-03219, 2025 U.S. Dist. LEXIS 179562, at *8 (D. Minn. Aug. 29, 2025) ("[I]nterpreting section 1225(b)(2) as applying to noncitizens who have already entered the country and are not currently seeking admission into the country, as Respondents urge, would render meaningless a recent amendment to section 1226 by the Laken Riley Act (LRA)").

During the hearing on September 18, 2025, Federal Respondents suggested to this Court that it consider new precedent from the BIA persuasive. That opinion, *Matter of Yajure Hurtado*, 29 I. & N. Dec 216 (B.I.A. 2025), adopted the position that noncitizens present in the United States without admission are "seeking admission" for purposes of § 1225(b)(2), and therefore must be detained without a bond hearing. Not only is the decision at odds with principles of statutory interpretation just discussed, but this Court declines to follow the BIA opinion for two additional reasons: first, this Court is not bound by agency interpretations, especially those in conflict with well-reasoned decisions by other federal courts, *see* discussion *infra* Section

IV.B.2.c, and second, it contravenes longstanding federal policy on interpretation and application of §§ 1225(b) and 1226(a).

First, this Court does not defer to the BIA decision. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (noting "agencies have no special competence in resolving statutory ambiguities," but "[c]ourts do"). "[C]ourts must exercise independent judgment in determining the meaning of statutory provisions," and they "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters.*, 603 U.S. at 394, 413. Under *Skidmore*, the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Chafla*, 2025 U.S. Dist. LEXIS 184909, at *22 (applying *Skidmore* and *Loper Bright* to analyze the *Yajure Hurtado* decision); *Aceros v. Kaiser*, No. 25-cv-06924, 2025 U.S. Dist. LEXIS 179594, at *23 (N.D. Cal. Sept. 12, 2025) (same). The BIA's current position is not only inconsistent with earlier pronouncements but also with the well-reasoned consideration of district courts. *See* discussion *infra* Section IV.B.2.c.

Second, it would contravene decades of precedent to adopt the position that any noncitizen present in the country without admission is subject to mandatory detention without bond hearing, no matter how long that person has resided inside the United States, a fact the BIA itself acknowledges in *Yajure Hurtado*. 29 I. & N. Dec. at 225. Until recently, the Executive Branch applied § 1226(a) to noncitizens

without documentation already present in the United States. The relevant implementing regulations declared: "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 FED. REG. 10312, 10323 (Mar. 6, 1997). During Supreme Court oral arguments in *Biden v. Texas*, the Solicitor General stated "DHS's long-standing interpretation has been that 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Transcript of Oral Argument at 44:24–45:20, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954); *see Chafla*, 2025 U.S. Dist. LEXIS 184909, at *24 (citing the same); *Martinez*, 2025 U.S. Dist. LEXIS 141724, at *12 n.9 (same). Further, the *Jennings* plurality determined "§ 1226 applies to aliens already present in the United States" and thus "creates a default rule for those aliens" and "also permits the Attorney General to release those aliens on bond." 583 U.S. at 303.

### c.    Consensus in recent caselaw

Recent opinions in this District by Chief Judge Walker and Judge Neumann have rejected an interpretation of § 1225(b)'s provision for mandatory detention of noncitizens "seeking admission" that applies to noncitizens—like Mr. Chang Barrios—who have been residing in the United States for more than two years in light of the relevant statutory text and overall statutory scheme. *De Oliveira*, 2025 U.S. Dist. LEXIS 125776; *Chafla*, 2025 U.S. Dist. LEXIS 184909. Nearly all district courts agree. *See, e.g.*, *Aceros*, 2025 U.S. Dist. LEXIS 179594; *Sampiao v. Hyde*, No.

1:25-cv-11981, 2025 U.S. Dist. LEXIS 175513 (D. Mass. Sept. 9, 2025); *Jimenez*, 2025 U.S. Dist. LEXIS 176165; *Francisco T*, 2025 U.S. Dist. LEXIS 179562; *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 U.S. Dist. LEXIS 169423 (E.D. Mich. Aug. 29, 2025); *Diaz v. Mattivelo*, No. 1:25-cv-12226,  2025 U.S. Dist. LEXIS 166667 (D. Mass. Aug. 27, 2025); *Romero*, 2025 U.S. Dist. LEXIS 160622; *Maldonado v. Olson*, No. 25-cv-3142, 2025 U.S. Dist. LEXIS 158321 (D. Minn. Aug. 15, 2025); *Rosado v. Figueroa*, No. CV-25-02157, 2025 U.S. Dist. LEXIS 156344 (D. Ariz. Aug. 11, 2025), R&R adopted sub nom.; *Rocha Rosado v. Figueroa*, No. CV-25-02157, 2025 U.S. Dist. LEXIS 156336 (D. Ariz. Aug. 13, 2025); *Benitez v. Francis*, 2025 U.S. Dist. LEXIS 153952; *Martinez*, 2025 U.S. Dist. LEXIS 141724; *Gomes*, 2025 Dist. LEXIS 128085; *Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

Thus, this Court concludes that § 1225(b) does not apply to Mr. Chang Barrios as a noncitizen who has been present in the country for nearly seventeen years and that 1226(a) governs his detention.

### 3.    Due Process

A court may grant a writ of habeas corpus to a petitioner who demonstrates his detention violates the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3).  The petitioner must prove illegal detention by a preponderance of the evidence. *De Oliveira*, 2025 U.S. Dist. LEXIS 125776, at *8 (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).  Mr. Chang Barrios brings his habeas petition for violation of his Due Process rights under the Fifth Amendment and the Court thus considers the merits of this claim.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. am. V. While "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), the Fifth Amendment's due process protections among them, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990), "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citing, e.g., *Plyler v. Doe*, 457 U.S. 202, 210 (1982)).

Federal Respondents argue that "to the extent § 1226 were found to apply . . . Petitioner's detention would therefore be authorized by statute and regulation, with no basis for the Court to order his release." *Opp'n* at 10. Federal Respondents further admit that if Mr. Chang Barrios is "found to be detained under § 1226, he could seek a bond hearing to contest such detention." *Id.* However, Mr. Chang Barrios remains wrongly detained under § 1225(b)(2) and thus is unable to obtain a ruling from an immigration judge on the merits, as his counsel explained at the September 18, 2025 hearing. *Hr'g Min. Entry*.

Because Petitioner is rightfully subject to discretionary detention under § 1226(a), "[h]e is, accordingly, entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment." *Sampiao*, 2025 U.S. Dist. LEXIS 175513, at *25. To determine whether detention violates procedural due process, courts apply

the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Chafla*, 2025 U.S. Dist. LEXIS 184909, at *29 (analyzing procedural due process challenge to the detention of noncitizen held pursuant § 1226(a) using the *Mathews* test); *Sampiao*, 2025 U.S. Dist. LEXIS 175513, at *26 (same); *Hernandez-Lara*, 10 F.4th at 27-28 (same). Under *Matthews*, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a.    Private Interest

Mr. Chang Barrios's liberty interests are at stake. He asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release the noncitizen on bond, to release them on their own recognizance, or to keep them detained. 8 U.S.C. § 1226(a). If the immigration officer opts for continued detention, the noncitizen can seek review of that decision at a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1) (2025). However, denying Mr. Chang Barrios's the opportunity to challenge his detention determination is tantamount to denying due process. *See Hernandez-Lara*,

26

10 F.4th at 28 ("[T]he government's exercise of its power to detain immigrants pending removal is subject to important constitutional limitations." (quotation modified)).  "'[D]ue process requires the government to either (1) prove by clear and convincing evidence that [a noncitizen] poses a danger to the community or (2) prove by the preponderance of the evidence that [they] pose[] a flight risk' in order to impose detention throughout the period of removal proceedings, including appeals." *De Oliveira*, 2025 U.S. Dist. LEXIS 125776, at *16 (quoting *Hernandez-Lara*, 10 F.4th at 41).  Federal Respondents have not given Mr. Chang Barrios the bond redetermination hearing he is guaranteed, let alone met their burden for continued detention.  Mr. Chang Barrios has clearly established that the first *Matthews* factor weighs in his favor.

### b.  Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  424 U.S. at 335.  The risk of erroneous deprivation is large where, as here, Federal Respondents have made no showing that Mr. Chang Barrios presents any public safety or flight risk.  Accordingly, the second *Mathews* factor also weighs heavily in favor of Mr. Chang Barrios.

### c.  Government Interest

Finally, the third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail." 424 U.S. at 335. Federal Respondents do not raise any governmental interest favoring Mr. Chang Barrios's continued detention without bond hearing. *See Chafla*, 2025 U.S. Dist. LEXIS 184909, at *34 (identifying governmental interest in favor of immigration habeas petitioners' continued detention without a hearing as an "across-the-board application of an inapplicable statute"). In fact, the public interest weighs against detention without a hearing. *See Hernandez-Lara*, 10 F.4th at 33 (finding "unnecessary detention" of noncitizens "imposes substantial societal costs"). Thus, the third *Matthews* factor weighs against Federal Respondents.

### C. Temporary Restraining Order

The current TRO is scheduled to remain in effect until October 1, 2025. *TRO Am. Order* at 3. Under *Granny Goose Foods v. Brotherhood of Teamsters & Auto Trust Drivers*, 415 U.S. 423, 433 (1974), there is some question as to whether the Court, absent the consent of the parties, may extend the TRO beyond October 1, 2025. The Court therefore ORDERS the Federal Respondents and Mr. Chang Barrios's counsel to consult and inform the Court by the end of the day on October 1, 2025 of their respective positions regarding an extension of the injunction insofar as it prohibits the Federal Respondents from the District of Massachusetts pending further order of this Court.

## V.    CONCLUSION

Federal Respondents have unconstitutionally deprived Mr. Chang Barrios of his Fifth Amendment right to due process holding him without completing a bond

hearing during the pendency of his immigration proceedings. Mr. Chang Barrios has resided in the Unites States for nearly seventeen years and is not "seeking admission" for purposes of § 1225(b)(2)'s mandatory detention provision.

Although the Court could order Mr. Chang Barrios released pending the bond hearing without condition, the Court will allow the Federal Respondents to immediately propose conditions for release that will assure Mr. Chang Barrios's appearance at the to be scheduled bond hearing. There is nothing in this record that remotely suggests that Mr. Chang Barrios is a danger to society, so the only proper interim release conditions should be directed solely to assuring his appearance at the bond hearing, which in Mr. Chang Barrios's case should be minimal. The Court expects the Federal Respondents to act quickly in formulating whatever conditions they deem essential, and Mr. Chang Barrios to act quickly in responding. If there are disagreements, the Court will resolve them no later than Friday, October 3, 2025.

Accordingly, the Court GRANTS Carlos Augusto Chang Barrios's First Amended Habeas Petition and Complaint for Declaratory and Injunctive Relief (ECF No. 25) and ORDERS the Government and Mr. Chang Barrios to propose a minimal set of release conditions pending a bond hearing pursuant to 8 U.S.C. § 1226(a). The Court further enjoins Federal Respondents from denying Mr. Chang Barrios a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to him and ORDERS Federal Respondents shall provide Mr. Chang Barrios with a bond hearing in accordance with 8 U.S.C. § 1226(a)(2) within fourteen days of the date of this order. Finally, the Court ORDERS Federal Respondents and Mr. Chang Barrios to file a status report

by Friday, October 3, 2025 concerning his continued detention and a second status report within five days of his bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial.

    SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2025